UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO A., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security[1] <br><br> Defendant. | Case No.: 20-cv-01768-KSC <br><br> **ORDER ON JOINT MOTION FOR JUDICIAL REVIEW** <br><br><br> **[Doc. No. 17]** |

On September 9, 2020, plaintiff Francisco A. ("plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of defendant's denial of his application for disability benefits. Doc. No. 1. Before the Court is the parties' Joint Motion for Judicial Review (the "Joint Motion" or "Jt. Mot."). Doc. No. 17. In the Joint Motion, plaintiff requests to have his application for benefits remanded to the Social Security Administration (the "Administration") for further proceedings, and defendant ("defendant" or the "Commissioner") moves to have her determination that plaintiff is not disabled affirmed.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi is substituted for Andrew Saul.

*See generally id.* The Court has carefully considered the parties' arguments, the applicable law, and the evidence in the record. For the reasons stated below, plaintiff's request for remand is **DENIED** and the judgment of the Commissioner is **AFFIRMED**.

## I. BACKGROUND

### A. Plaintiff's Application for Disability Benefits

On November 6, 2017, plaintiff applied for supplemental security income under Title XVI of the Social Security Act ("SSA"), alleging a disability beginning March 11, 2017. Certified Administrative Record ("AR") at 15.[2] After his application was denied at the initial stage and upon reconsideration, plaintiff requested and was given a hearing before an administrative law judge ("ALJ"). *Id.* The hearing was held on August 26, 2019. *Id.* Plaintiff appeared with counsel and gave testimony, and the ALJ also heard testimony from a vocational expert. *Id.* In a decision dated December 20, 2019, the ALJ concluded that plaintiff was not disabled as defined by the SSA. *Id.* at 15, 25. The Appeals Council denied review of the ALJ's decision on July 30, 2020, and the decision became final on that date. *Id.* at 1-3.

### B. Summary of the ALJ's Findings

The ALJ followed the five-step process described in the applicable regulations in rendering his decision.[3] *See generally* AR at 15-25. At step one, the ALJ found plaintiff

---

[2] The Court adopts the parties' pagination of the AR. All other record citations are to the page numbers generated by the Court's CM/ECF system.

[3] *See* 20 C.F.R. §§ 404.1520. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *Id.*, § 404.1520(a)(4)(i). Second, the ALJ must determine whether the claimant suffers from a "severe" impairment within the meaning of the regulations. *Id.*, § 404.1520(a)(4)(ii). Third, if the ALJ finds the claimant suffers from a severe impairment, the ALJ must determine whether that impairment meets or is medically equal to one of the impairments identified in the regulations' Listing of Impairments. *Id.*, § 404.1520(a)(4)(iii). Fourth, if the impairment does not meet or equal a listing, the ALJ must determine the claimant's residual functional capacity ("RFC") based on all impairments (including those that are not severe) and whether that RFC is sufficient for the claimant to perform his or her past relevant work. *Id.*, § 404.1520(a)(4)(iv). At the fifth and final step, the ALJ must determine whether the claimant can make an adjustment to other work based on his or her RFC. *Id.*, §404.1520(a)(4)(v). Throughout this process, "the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (citation omitted).

did not engage in substantial gainful activity from the alleged date of the onset of plaintiff's disability through the date of the ALJ's decision. *Id.* at 17.

At step two, the ALJ found that plaintiff had the following severe impairments: schizoaffective disorder, borderline intellectual functioning, history of methamphetamine dependence, morbid obesity, obstructive sleep apnea, and diabetes mellitus type II. *Id.* The ALJ further found that these medically determinable impairments "cause[d] more than minimal limitations in [plaintiff's] ability to perform work-related activities."[4] *Id.*

At step three, the ALJ found that none of these plaintiff's physical or mental impairments, alone or in combination, met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. *Id.* at 17-20.

At step four, the ALJ found that plaintiff had the RFC to perform sedentary work, except that plaintiff could perform simple, repetitive tasks with occasional interaction with the public. *Id.* at 20. The ALJ then determined that plaintiff could not return to his previous work as a dishwasher. *Id.* at 24.

At step five, the ALJ found that plaintiff could perform jobs that existed in significant numbers in the national economy, taking into consideration plaintiff's age, education, work experience and RFC and the testimony of a vocational expert, who identified sedentary positions that could be performed by a person with plaintiff's specific limitations.[5] *Id.* The ALJ then found that plaintiff was not disabled within the meaning of the Social Security regulations. *Id.* at 25.

## II. DISPUTED ISSUES

Plaintiff requests that the Court reverse the ALJ's decision and remand for further proceedings (or, alternatively, vacate and remand) on two bases: First, plaintiff argues that the ALJ did not properly consider the medical evidence of plaintiff's mental impairments.

---

[4] The ALJ found that plaintiff's asthma was well-controlled and did not limit his ability to work. *Id.*

[5] These included document preparer (DOT 249.587-018), production worker (DOT 734.687-074) and table worker (DOT 739.687-182). *See id.*

*See* Jt. Mot. at 6-8; 34. Plaintiff asserts that the ALJ "fail[ed] to address" evidence of plaintiff's anger, paranoia and tendency to isolate himself, leading to an RFC that is "inconsistent" with plaintiff's mental limitations. *Id.* at 7; *see also id.* at 15 (stating that plaintiff's medical records are "consistent with a long history of mental impairment" that the ALJ "did not address"). As a result, plaintiff claims, the ALJ assigned plaintiff an RFC that is not supported by substantial evidence. *Id.* at 8.

Second, plaintiff argues that the ALJ's decision should be overturned because it was issued under an "unconstitutional delegation of authority." *Id.* at 15. Plaintiff explains that the Office of Legal Counsel ("OLC") has recently issued an opinion that "casts significant doubt" upon the constitutionality of the Commissioner of Social Security's appointment, because pursuant to 42 U.S.C. § 902(a)(3) (hereafter "Section 902(a)(3)") the Commissioner serves a six-year term and is only removable for cause, in violation of the separation of powers. *Id.* at 16-17. Plaintiff acknowledges that the OLC's opinion is "not binding," but states that Commissioner Saul's appointment was likely unconstitutional, he "had no authority to delegate to the ALJ in this case or the Appeals Council to make findings of fact and issue final decisions as to benefits eligibility." *Id.* at 16, 18. Thus, according to plaintiff, since the "relevant agency decisions" (i.e., the administrative hearing, the issuance of the ALJ's decision, and the Appeals Council's denial of review) all took place while Andrew Saul was the Commissioner of Social Security, his claim must be remanded for readjudication. *Id.* at 18, 33.

Defendant requests that the denial of benefits be affirmed. *Id.* at 34. With respect to the RFC, defendant argues that the ALJ "reasonably balanced the evidence before him and translated that evidence" into an appropriate and well-supported RFC. *Id.* at 12. Defendant states that the ALJ properly accounted for plaintiff's mental limitations in assessing plaintiff as capable of performing simple, repetitive tasks with occasional interaction with the public. *Id.* at 14. Defendant further asserts that plaintiff is "attempt[ing] to reweigh the evidence" on appeal because he failed to meet his burden of demonstrating his disability in the first instance. *Id.* at 11, 14.

Regarding plaintiff's argument that the ALJ's decision resulted from an "unconstitutional delegation of authority," *id.* at 15, defendant "agree[s] that [Section] 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." *Id.* at 20. However, defendant states that "without more," there is no basis to set aside the ALJ's decision (or the subsequent denial of review) because under applicable precedent, plaintiff must "show" that the unconstitutional restriction "actually caused him harm," meaning here that it informed the decision to deny his claim for benefits. *Id.*; *see also id.* at 24 (noting that there is no "nexus" between the ALJ's decision and the allegedly unconstitutional removal provisions). Defendant also cites several other "remedial doctrines" – including harmless error, the *de facto* officer doctrine, the rule of necessity and "prudential considerations" – that weigh against disturbing the ALJ's decision based on Commissioner Saul's allegedly unconstitutional appointment. *See id.* at 27-32.

### III.   STANDARD OF REVIEW

The Commissioner's final decision "must be affirmed" if it is "supported by substantial evidence, and if the Commissioner applied the correct legal standards." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ford*, 950 F.3d at 1154 (citation omitted). This Court must review the record as a whole and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Id*. However, the Court cannot uphold the Commissioner's decision for reasons "'the agency did not invoke in making its decision.'" *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). The Court may affirm an erroneous decision if the error is harmless. *Ford*, 950 F.3d at 1154.

///

///

## IV. DISCUSSION

**Issue 1: The RFC and Plaintiff's Mental Impairments**

A. The ALJ Appropriately Considered the Objective Medical Evidence and Plaintiff's Subjective Testimony in Assessing Plaintiff's RFC

Plaintiff asserts that the ALJ's assessment of plaintiff's RFC is not supported by substantial evidence because in "formulating" the RFC, the ALJ "relied upon the findings of Dr. Whitehead," which plaintiff asserts are "inconsistent" with the record as a whole. *See* Jt. Mot. at 7-8. Plaintiff further asserts the ALJ improperly failed to address or consider all the "pertinent" records of plaintiff's treatment, which allegedly demonstrate that plaintiff's "anger," "paranoia," and tendency to "isolate[] himself" prevent him from "working in proximity to or in coordination with coworkers and supervisors." *Id.* at 6, 7.

The Court disagrees. The ALJ's decision carefully documents the record before him and the bases for his RFC determination. The Court notes that the ALJ's RFC determination was preceded by his assessment of whether plaintiff's mental limitations satisfied Paragraphs A, B or C of the listings, including a detailed review of the medical records in this regard and the ALJ's consideration of plaintiff's testimony and demeanor at the hearing. *See* AR at 18-20. Based on these considerations, the ALJ found plaintiff had only moderate limitations in both "understanding, remembering, or applying information" and "interacting with others," and mild limitations in "concentrating, persisting or maintaining pace" and "adapting or managing oneself." *Id.* at 18. The ALJ further determined that these limitations "[did] not preclude the performance of ***all*** competitive work." *See id.* (emphasis added).

Proceeding to the RFC determination, the ALJ expressly considered plaintiff's subjective testimony regarding his limitations, and the objective medical evidence in the record. *See id.* at 20-23. The ALJ noted that plaintiff had been hospitalized following a 5150 hold in early 2017, at which time he was diagnosed with schizoaffective disorder, bipolar type, and methamphetamine dependence. *Id.* at 21. The ALJ also noted that plaintiff sought treatment, and had been prescribed medication, for symptoms of depression,

anxiety, and irritability in 2017 and 2019. *Id.* With reference to Dr. Whitehead's October 2019 consultative examination, the ALJ noted that plaintiff reported a history of depression and that during the examination plaintiff was cooperative, rational and did not exhibit signs of a major mood disorder. *Id.* at 22. The ALJ addressed plaintiff's physical limitations based on a review of the medical records. *Id.* at 22-23.

The ALJ also considered plaintiff's subjective symptom testimony.[6] *Id.* at 22. The ALJ found that although plaintiff's impairments could cause the alleged symptoms, plaintiff's testimony regarding the limiting effect of those impairments was "not entirely consistent" with the objective medical evidence. *Id.* at 22. Specifically, the ALJ noted that plaintiff's symptoms improved with treatment compliance, including taking his prescribed medications and abstaining from methamphetamine use. *Id.* at 23. The ALJ also noted that plaintiff helped care for his child and attended church. *Id.* at 19, 21. In other words, the ALJ considered plaintiff's subjective testimony, but "rejected [his] conclusion that his [condition] rendered [him] unable to engage in substantial gainful employment of any kind." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (finding no error in ALJ's discrediting of subjective testimony). In doing so, the ALJ carefully detailed the facts in the record that undermined plaintiff's testimony and supported his determination that plaintiff's mental and physical limitations "would not preclude the performance of sedentary work with some additional mental and social limitations due to [plaintiff's] severe mental impairments." *See* AR at 20-23; *see Connett v. Barnhart*, 340 F.3d 871, 873-74 (9th Cir. 2003) (finding ALJ provided "clear and convincing reasons" to reject

---

[6] At the hearing, plaintiff stated that due to his depression and his weight, he spent most of his day he "stayed stuck in [his] house" and watched TV "most of the time." AR at 40-41. Plaintiff also testified that he took "all kinds of medicine to calm [himself] down," and described his symptoms as follows: "Sometimes I think people are after me and I tell my wife and I just go home and I don't go out [of] the house for a couple days because I think they're after me. … [S]ometimes I hear voices." *Id.* at 37. He testified that he hears voices "once every two months," but that he had recently started taking a new medication and that he had not experienced auditory hallucinations since beginning the treatment. *Id.* at 48. Plaintiff also stated he occasionally suffered from paranoia. *Id.*

claimant's testimony by identifying "specific facts in the record that demonstrate[d] an objective basis for his finding").

Consistent with the applicable regulations, the ALJ did not assign "any specific evidentiary weight, including controlling weight," to any medical opinions or findings, including Dr. Whitehead's report. *See id.* at 23. Rather, in the context of the entire medical record, the ALJ found Dr. Whitehead's opinion regarding plaintiff's limitations was persuasive in some respects, yet unpersuasive in others. *Id.* at 23. Specifically, based on the consistency of Dr. Whitehead's assessments with the objective medical record, the ALJ found Dr. Whitehead's conclusion that plaintiff could perform simple tasks persuasive, but disagreed with Dr. Whitehead's opinion that plaintiff had "no limitations." *Id.*

The Court finds that the ALJ appropriately evaluated Dr. Whitehead's report (and other opinion evidence in the record) for consistency and supportability as required by the regulations. *See* 20 C.F.R. § 404.1520c(b)(2) (identifying "supportability . . . and consistency" as "the most important factors" the Administration considers in determining "how persuasive . . . a medical source's medical opinions" are). The Court further finds that the ALJ could reasonably find, based on the evidence cited, that plaintiff could perform simple, repetitive tasks, with "some social limitations due to the claimant's reported symptoms of paranoia and irritability." *Id.* at 23; *see Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) ("When the evidence can rationally be interpreted in more than one way, the [C]ourt must uphold the Commissioner's decision.").

B. <u>The RFC Determination Is Supported by Substantial Evidence</u>

The Court has independently reviewed the record, "consider[ing] the entire record as a whole" and weighing adverse as well as supporting evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Based upon its review as summarized below, the Court further finds that the ALJ's decision is supported by substantial evidence.

Plaintiff was hospitalized from March 2, 2017 through March 4, 2017, on reports that he was a danger to himself. *Id.* at 443. Plaintiff, who was homeless at the time,

reportedly was experiencing suicidal ideation and paranoid delusions and had not been compliant with his medications. *Id.* He was started on Prozac and Zyprexa "with significant response to treatment." *Id.* at 442. He was discharged with a plan for "close psychiatric followup monitoring." *Id.*

Plaintiff's mother referred him to the County's Mental Health Services in August 2017. *Id.* at 470. During an August 23, 2017 initial screening, he was noted to be cooperative, alert and oriented with appropriate affect, euthymic mood and coherent thought process. *Id.* at 463. He denied suicidal intent and reported wanting to hurt himself in the past, but that he "f[elt] better" when taking his medications. *Id.* at 464. He reported feeling anxious and unhappy with his recent weight gain, insomnia, and visual and auditory hallucinations that were improved with medicine. *Id.* at 464, 468. He expressed an interest in receiving continued mental health services. *Id.* at 464.

Plaintiff returned to the County Mental Health Services on August 29, 2017, for a behavioral health assessment. *Id.* at 470. He was noted to be depressed, cooperative and alert. *Id.* at 477. He reported auditory and visual hallucinations, mood swings, and feeling sad and angry. *Id.* at 470, 472. Plaintiff was assessed as meeting the criteria for schizoaffective disorder and major depressive episodes. *Id.* at 479. He stated he was interested in obtaining medications, which he reportedly had not been taking in the five to six months before this appointment, because they made him "relaxed" and "there's no more voices." *Id.* He reported that he went to church "often" and expressed an interest in ongoing therapy. *Id.* at 471, 473, 479.

The record contains notes of various visits to Family Health Centers of San Diego for treatment of his depression and anxiety, among other conditions. *See, e.g.*, AR at 501, 543-44, 588-89. On April 25, 2018, he was started on a trial of Wellbutrin for depression. *Id.* at 501. He was requested to follow up in 4 to 6 weeks and counseled that regular exercise and "relaxation techniques" could alleviate his depression. *Id.* at 504-05.

Plaintiff was seen by K. Rozell, LCSW, for several visits between October 2018 and April 2019 for his symptoms of depression and anxiety. *See, e.g., id.* at 543, 551, 553, 554-

57. During an October 18, 2018 intake assessment, plaintiff reported that he had been depressed "for all of his life" and had taken Prozac, Serequel and Adderall until he moved to Riverside two years prior. *Id.* at 554. He reported feeling "down," nervous and easily irritated or annoyed. *Id.* Ms. Rozell noted that plaintiff was alert and cooperative, with an appropriate affect and a depressed and anxious mood. *Id.* at 557.

A behavioral health assessment by Ms. Rozell dated April 1, 2019 indicates that plaintiff had depressive and anxiety symptoms "since childhood" and that his depression had worsened with his recent weight gain. *Id.* at 545. He reported visual hallucinations and paranoia but denied delusions or mania. *Id.* Ms. Rozell noted plaintiff was alert, coherent and cooperative. *Id.* at 547-48. Ms. Rozell recommended plaintiff receive supportive psychotherapy and psychiatry regularly over the next six months, with a goal of "reduc[ing] anxiety and depressive symptoms." *Id.* at 549.

During an April 9, 2019 visit to Family Health Centers, plaintiff reported "anxiety" and "overeating," but the provider did not further elaborate on these issues. *Id.* at 598-99.

An "Encounter and Procedure" note from R. Searles, M.D. at St. Vincent de Paul dated May 21, 2019, reflects that plaintiff presented on that date seeking a letter for a service animal. *Id.* at 617. Plaintiff reported that he felt depressed and hopeless, and that he had been "feeling down for months" since he stopped taking Wellbutrin. *Id.* Plaintiff reported that he tended to isolate himself and did not like to be around people. *Id.* at 617-18. Plaintiff also reported that he felt "2/10" without his meds and "7/10" when taking them. *Id.* Plaintiff also reported that he recently got a dog, and that it "made [him] happy" but that he required a letter from a medical provider to be able to keep the dog at his housing complex. *Id.* Dr. Searles noted that plaintiff met the criteria for major depressive disorder, for which Wellbutrin was partially effective. *Id.* at 618. Dr. Searles recommended plaintiff start Lexapro and gave plaintiff a two-month supply with instructions to follow up with his providers at Family Health Centers in six weeks. *Id.* at 618-19.

On June 6, 2019, plaintiff presented to Dr. Baiou at Family Health Centers to request completion of a "statement of parental incapacity" form. *Id.* at 588. Plaintiff reported that

he was unable to take care of his daughter due to his obesity, difficulty ambulating, diabetes, and mood disorder. *Id.* Dr. Baiou's note indicates that the form was "completed and scanned," but does not contain any objective findings from this visit.[7] *Id.* at 589.

On October 14, 2019, plaintiff was evaluated by Dr. Whitehead, after having failed to appear for a previously scheduled consultative psychological examination on February 20, 2018. *Id.* at 493, 621-27. Dr. Whitehead took plaintiff's history, performed a mental status evaluation, and conducted specialized testing, the results of which were documented in his report. *Id.* at 624. Plaintiff was taking Wellbutrin, among other medications, at the time of this examination. *Id.* at 625. The results of the mental status examination are notable for Dr. Whitehead's findings that plaintiff presented in a stable and euthymic mood and "actively participated in the evaluation process." *Id.* at 625-26. Dr. Whitehead did not observe any indications of hallucinations, paranoia, or other psychotic thought processes. *Id.* at 626. Dr. Whitehead also noted the absence of any signs of a severe affective or mood disorder. *Id.* The testing revealed that plaintiff had borderline intellectual functioning. *Id.* at 628. Based upon his examination, Dr. Whitehead concluded that plaintiff could perform work activities that required simple tasks at a constant level, and that plaintiff's mental health issues "did not seem prominent and [were] managed on an outpatient basis." *Id.* Dr. Whitehead deemed plaintiff capable of working without limitations. *Id.* at 621-22.

Other medical notes and reports in the record are not germane to plaintiff's claim that his anger, paranoia, and self-isolating behaviors prevent him from working. However, these records reflect on plaintiff's other medically determinable impairments, including morbid obesity, sleep apnea, diabetes, and leg swelling. *See e.g.,* AR at 506-08, 519-23, 525-28, 539-42, 598-99. The record also contains documentation that plaintiff requested

---

[7] Plaintiff was seen by Dr. Baiou on May 23, 2019, which Dr. Baiou noted was his "1st time to see patient." *Id.* at 592. Upon examination, Dr. Baiou assessed plaintiff with morbid obesity and type II diabetes mellitus and treated him for a cough. *Id.* at 592-93. There is no indication that plaintiff's anxiety or mood disorders were discussed or evaluated during this visit, nor any reference to plaintiff's recent prescription for Lexapro. *See id.*

authorization for a motorized scooter for mobility. *Id.* at 534-37, 575, 576, 595, 603. There are several notes of visits with a nutritionist, and referrals for bariatric surgery consultations. *See id.* at 560-71, 590-91, 595, 601-02, 608-11, 614.

Based on the foregoing review of the objective medical evidence, the Court finds that the ALJ's determination that plaintiff could engage in sedentary work, limited to simple, repetitive tasks with occasional interaction with the public, is supported by substantial evidence. Although there are references to plaintiff's depression, anxiety, paranoia and self-isolation, there are also repeated references to these conditions being controlled or improved by medication, including plaintiff's own statements to his medical providers. Given these references, the Court cannot agree that the record demonstrates only a "sudden burst" of improvement in plaintiff's conditions, *see* Jt. Mot. at 15, but instead documents a consistent pattern of improvement with medication. The Court therefore finds that the ALJ, based on the record before him, could reasonably have concluded that plaintiff's limitations did not "preclude the performance of all competitive work." AR at 18; *see also Revels*, 874 F.3d at 654 (noting that "where the evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld"). Accordingly, the ALJ's decision that plaintiff is not disabled will not be disturbed. *See Ahearn*, 988 F.3d at 1115 ("If substantial evidence in the record supports the ALJ's decision we must defer to the ALJ.").

### Issue 2: Unconstitutional Delegation of Authority

The Court finds no merit to plaintiff's contention that he is entitled to a new hearing because Commissioner Saul – and, by extension, the ALJ and the Appeals Council – were "insul[a]ted from a review that [was] subject to Presidential and thus political oversight." Jt. Mot. at 33. As numerous courts to address this issue have found, to be entitled to remand, plaintiff must "show[] a connection between the denial of benefits" by a properly appointed ALJ and "the unconstitutional removal provision." *See Ramos v. Comm'r of Soc. Sec.*, No. 1:20-cv-01606-EPG, 2022 WL 105108, at *4 (E.D. Cal. Jan. 11, 2022); *see also id.* at *3 (collecting cases); *Kasey V. v. Comm'r of Soc. Sec.*, No. C20-6153 RAJ, 2022 WL 102048,

at *6 (W.D. Wash. Jan. 11, 2022) (affirming denial of benefits where plaintiff "failed to show any connection between the unconstitutional removal provision and the ALJ's decision denying him benefits").

In *Michele T. v. Comm'r of Soc. Sec.*, -- F. Supp. 3d --, 2021 WL 5356721 (W.D. Wash. Nov. 17, 2021), the court addressed the identical argument plaintiff advances here: namely, that pursuant to the Supreme Court's decisions in *Selia Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020) and *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the removal provisions of Section 902(a)(3) are unconstitutional and therefore required remand. *See generally id.* at **3-4. The *Michele T.* court expressly found that "a straightforward application of *Selia Law* and *Collins* dictates a finding that the removal provision in [Section] 902(a)(3) violates the separation of powers[,]" and is unconstitutional. *See id.* at *3. The court rejected the argument, however, that the flawed removal provision "automatically render[ed] all agency action unconstitutional" and "void." *Id.* at *4; *see also Kasey V.*, 2022 WL 102048, at *7 ("although the removal clause in 42 U.S.C. § 902(a)(3) violates separation of powers, it does not require the ALJ's decision to be reversed"). The *Michele T.* court explained that this argument was "not supported" by *Selia Law* and *Collins*, because the Administration would continue to function even if the offending provision were severed. *Id.*

The *Michele T.* court also rejected plaintiff's argument that "there [was] a possibility" that plaintiff was harmed by the unconstitutional provision because it "politicized" plaintiff's claims. *Michele T.*, 2021 WL 5356721, at *5. Instead, the court looked to whether plaintiff could establish "an identifiable basis to contend that but for the unconstitutional removal provision," her claim for benefits would have been decided differently. *Id.* The court observed that there was "nothing showing the Commissioner of the [Administration] implemented new and relevant agency action that may have turned upon the President's inability to remove the Commissioner," nor any evidence that any "regulations, agency policies or directives" implemented by Commissioner Saul "affected her claims." *Id.* Plaintiff was also unable to show that but for the unconstitutional removal

provision, a different Commissioner would have been appointed "who would have administered plaintiff's claims differently." *Id.* Finally, plaintiff could not demonstrate that she was harmed by Section 902(a)(3)'s removal provision, because "the ALJ's decision . . . [was] based upon an uncontested factual record and the application of governing law, including unchallenged regulations." *Id.* In sum, the plaintiff in *Michele T.* was unable to "show how or why [Section] 902(a)(3)['s] removal clause possibly harmed her." *Id.*

The Court finds that the same reasoning applies here, and that the same conclusion follows. As in *Michele T.*, plaintiff's claim for benefits was adjudicated on an uncontested factual record by a properly appointed ALJ who correctly applied governing law and precedent. Plaintiff has not demonstrated that but for Commissioner Saul's appointment pursuant to the "constitutionally infirm" removal provision, *see* Jt. Mot. at 33, the outcome of that adjudication would have been different. Plaintiff's vague statement that the ALJ and the Appeals Council were "protected" falls far short of the necessary showing that there was a "connection between the unconstitutional removal provision and the ALJ's decision denying him benefits." *Kasey V.*, 2022 WL 102048, at *6; *see also Frank W. v. Kijakazi*, No. 20-cv-1439-KSC, 2021 WL 5505883 at *4, (S.D. Cal. Nov. 23, 2021) (explaining that the likely unconstitutionality of Section 902(a)(3) "does not mean the adjudication of plaintiff's disability claim was 'infected,' 'tainted,' or decided 'under an unconstitutional delegation of authority.'").[8] Accordingly, plaintiff's request for remand on this basis is **DENIED**.

## V. CONCLUSION

The Court "may set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 446 F.3d 880, 882 *9th Cir. 2006). For the foregoing reasons, the Court finds in this case that the ALJ applied the

---

[8] As the Court finds the removal provisions of Section 902(a)(3) do not require remand, it does not reach defendant's other arguments regarding harmless error, the *de facto* officer doctrine, the rule of necessity and whether a rule requiring remand in all cases would be "fair" or "workable." *See* Jt. Mot. at 27-32.

correct legal standards, and that his determination that plaintiff is not disabled within the meaning of the SSA is supported by substantial evidence. The Court further finds that the removal provisions of 42 U.S.C. § 902(a)(3), even if unconstitutional, do not require reversal. Accordingly, **IT IS HEREBY ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk of the Court shall enter judgment accordingly and terminate the case.

Dated: February 7, 2022

Hon. Karen S. Crawford
United States Magistrate Judge